**Bishop R. E. RANGER, Appellant,**

**v.**

**Bishop J. O. PATTERSON et al., Appellees.**

**No. 6922.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 7, 1967.

Rehearing Denied Oct. 4, 1967.

H. A. Coe, Jr., Kountze, Mabry, Reardon & Woods, Houston, for appellant.

Brock & Williams, Houston, A. A. Latting, Memphis, Tenn., O. T. Wells, New York City, J. O. Patterson, Jr., Memphis, Tenn., for appellees.

STEPHENSON, Justice.

This is an appeal from an order denying a temporary injunction. Bishop Ranger filed

this suit seeking to enjoin defendants, Bishop Patterson and others, from interfering with plaintiff in the conduct of the affairs of his office. All of the parties to this suit are officials of the Church of God in Christ. The parties will be referred to here as they were in the trial court.

Plaintiff alleged: That he is a Bishop of and over the Southeast District of Texas and that defendants occupy several different positions in the National Organization. That a church trial was held in which defendants participated in an attempt to remove plaintiff from his office as Bishop. That an announcement was made that plaintiff had been revoved as Bishop and his office declared vacant. That his removal was illegal and void because it did not comply with the Constitution, By-Laws, Customs and Practices of such church.

■ The sole point of error is that the trial court abused its discretion in refusing to grant a temporary injunction. However, the reasons relied upon by plaintiff, in contending the removal did not comply with the Constitution, By-Laws, Customs and Practices were: (1) Only one witness testified against plaintiff at the trial. (2) Illegal votes were cast for conviction. (3) The punishment assessed was illegal. (4) The charges made against plaintiff were not sufficient. (5) The verdict was not unanimous.

The Church Constitution and By-Laws provide that all trials shall be held according to certain scriptures: Deut. 17:6; 1 Tim. 5:19; 2nd Cor. 13:1. All three of these scriptures from the Bible mention testimony by two or three witnesses. Plaintiff offered in evidence a record of the church trial and contends this record shows that only one witness testified against plaintiff. When this testimony was offered counsel for defendants made the statement that defendants had no objection to it being admitted in evidence as long as it was understood that it was a summary of the record and did not purport to be the record of a court reporter taken in shorthand. The trial court

admitted this transcript of the testimony in evidence with the statement that it was recognized that such minutes were not verbatim testimony of what occurred. One of the defendants, Bishop Patterson, also identified as general secretary of the church and executive board, testified that he was present at the church trial, and that testimony was given against plaintiff by Bishop C. H. Brewer, Bishop T. L. Haiver, also by himself, in addition to the testimony of T. L. Pleas, shown in the transcript of the church trial. Counsel for plaintiff objected to the admission of such testimony, but no point of error is brought to this court as to such action. A witness called by plaintiff, Benjamin W. West, testified he was present during the church trial, and that he heard only one witness complain of the plaintiff, and no others. The judgment of the trial court constitutes an implied finding that more than one witness gave testimony against plaintiff.

■ Complaint if made that illegal votes were cast against plaintiff. This church trial was held by the General Council which is made up of the male elders of this church in good standing. The testimony showed: That the charges were read, evidence heard and a vote taken by having those present stand—907 voted for conviction and 3 voted against conviction. That there might have been 50 or 60 women present who stood at the time the vote was cast for conviction. Bishop Patterson testified the votes cast by the women were not counted. Benjamin W. West testified that when he walked into the door of the room in which the church trial was held, that he was not asked if he was a member of the council and there was no screening process to determine that people who voted were entitled to vote. He estimated 40 to 50 women were present and stood while the vote was cast against plaintiff. There is no further showing that illegal votes were counted or that a sufficient number were counted to affect the outcome of the vote taken. The judgment of the trial court constituted an implied finding that the voting was not illegal.

It is contended the punishment assessed was not authorized by the Constitution. The motion which was adopted by the General Council, according to the transcript of the church trial, was that plaintiff was removed from office as Bishop of the Church of God in Christ, and that after one year if he repented of his wrong, he could apply for reinstatement. Plaintiff testified: That every ordained minister of the Church of God in Christ is an elder. That he was an elder first and then a Bishop. That he had been serving as a Bishop, and also was an Elder. It is noted that the motion adopted by the General Council made no mention of plaintiff's status as an Elder, but only as a Bishop. Plaintiff cites to this court that portion of the official manual of the church governing the trial of an Elder. It is there provided that if the accused is found guilty, the judgment may take the form of expulsion from the church and ministry, or suspension for a limited time from his membership and ministry. No specific mention is made as to the form of a judgment which could be entered upon a trial of a Bishop. The manual states: "The trial of a bishop shall be that of an elder with these exceptions: He shall be tried before the General Council with the right of the General Assembly." Inasmuch as no exception is made as to the form of judgment being different, it would be presumed that the same punishment could be given a bishop as an elder, that is, that it could be expulsion from the church and ministry or suspension for a limited time from his membership and ministry. We have concluded that the judgment entered by the General Council in this case was included within and provided for by the general terms of the manual of the church.

Plaintiff also maintains that the charges made against him were not sufficient. It is argued that the manual of the church provides that a bishop shall hold office during good behavior and therefore can be removed only for bad behavior. The charges against plaintiff were set forth in a letter introduced in evidence and were as follows:

"The Members of the Executive Board, jointly and severally do herewith charge that you have engaged in and are presently engaging in activities and practices which are deemed to be (1) unbecoming of a Bishop of the Church of God in Christ; (2) not in the best interest of the Church of God in Christ; (3) diametrically opposed to the duly appointed and authorized executive body of the National Church; and (4) in direct opposition to the known decisions, wishes and desires of the General Assembly of the Church of God in Christ.

"More specifically the subscribing members of the Executive Board assert that it is their belief that you have (1) aided and abetted Bishop O. T. Jones, Sr. and others in their attempt to undermine the duly appointed and authorized executive body by appointing, without authority to do so, so-called supervisors or overseers of various states; (2) making statements and distributing literature that were apparently designed and intended to create confusion, discord, dissention and unwarranted and rebellious support within the rank and file of the Ministers and Laymen of the Church; (3) aided, abetted and in other ways supported Bishop O. T. Jones, Sr. and others when he and/or they engaged in the so-called excommunication of Bishop D. A. Burtor, Elder A. D. Baxter and other Pastors in the State of Pennsylvania, all without justification, but only because they chose to continue to recognize the duly appointed and authorized executive body of the National Church; (4) engaged in other activities and practices all of which along with the previously mentioned acts have been not in the best interest of the National Church and in complete and total defiance of the duly appointed and authorized executive body of the Church of God in Christ."

A portion of the Manual of the Church, just preceding the part providing for a trial of an elder reads as follows:

"The Eligibility of Elders

"The certificate of credentials of an Elder are valid only as long as his life adorns the Gospel of Christ, and his teachings are in harmony with the Church of God in Christ. Any Elder, Evangelist or member acting as pastor of a church, who teaches contrary doctrines, or causes dissention, or in any way proves his inability as a Pastor, may be removed by a State Overseer of a General Board, and another appointed in his place."

We hold that the charges as made were sufficient.

The last contention by plaintiff is that the verdict was not unanimous. As stated above, 907 voted for conviction and 3 for acquittal. Plaintiff relies upon that portion of the manual of the church pertaining to the trial of an elder which states that the accused may be punished if found guilty by the unanimous judgment of the court. Even though the paragraph found on page 22 of the manual of the church mentions the word "court" several times, such paragraph specifically covers the charges, trial and judgment of an elder and makes no mention of a bishop. It is recalled that such manual provides for trials of a bishop before the General Council. This court has not found anything in such manual to indicate how a "court" is established for the trial of an elder, nor who shall sit as a "court" nor the number. The only other mention of a "court" was on page 20 of such manual in a paragraph covering the trial of a church in which it is stated that the State Overseer may appoint a court of five elders. To extend the provision in the manual governing the trial of an elder before a "court" requiring a unanimous verdict, to the trial of a bishop before the General Council, would render the provision for a trial of a bishop meaningless. Inasmuch as the bishop being tried is a member of the General Council,

could always vote against conviction, and there could be no expulsion or suspension of a bishop. This clearly was not the intent as set forth in the manual of the church, and we hold that the verdict of the General Council did not have to be unanimous.

We find no abuse of discretion on the part of the trial court in denying the application for a temporary injunction.

Affirmed.